Cullem v. Latimer.

## CULLEM, ADM'X, V. LATIMER.

The remedy by writ of *mandamus* is not allowed in cases where the law affords other adequate means of redress, nor in any case, except to perform a duty clearly defined by law, involving no discretion nor leaving any alternative. The petition should therefore be very distinct and precise in the statement of the circumstances, so as to show that the party is entitled to this peculiar remedy. (Note 68.)

In the answer or return of the defendant to a rule to show cause why a *mandamus* should not issue according to the strict rules of the common law, the same certainty is required as in indictments, returns to writs of *habeas corpus*, counts, replications, &c.; and under any system there should be a reasonable degrees of certainty; a fair and legal reason should he disclosed why the alternative *mandamus* should not be obeyed.

The 17th section of the land law of 1837, (Hart. Dig., art. 1853.) authorizing the summary determination of conflicting claims to a location by the nearest justice of the peace and six jurors, contemplates the adjustment of the controversy before the transmission of the field-notes for record to the office of the county surveyor. But there may be circumstances which might authorize a resort to this summary remedy within some reasonable time after the field-notes have been transferred to one of the parties and placed upon the record; such as, for instance, fraud on the part of the officers, ignorance of the party that the survey had been made, &c.

Where the right to a location has been contested and determined by a justice of the peace and six jurors under the 17th section of the land law of 1837, the determination is final, and there is no appeal. (Note 69.)

It is a rule in application for a *mandamus* that all persons interested in the defense must be included in the rule to show cause. Therefore, where application is made for a *mandamus* to compel a survey or to survey, or the Commissioner of the General Land Office to issue a patent, all persons who, to the knowledge of the applicant, claim property in the land should be summoned to defend their rights.

Error from Red River.

*Morgan*, for plaintiff in error.

*Morrill*, for defendant in error.

HEMPHILL, CH. J.   This is an application for a *mandamus* to compel the defendant, as county surveyor, to survey for [**330**] the petitioner, as administratrix of the estate of Benjamin F. Brewster, deceased, and by virtue of his headright certificate, nineteen hundred and twenty acres of land, specially described in the petition, and including an improvement occupied and settled by the decedent in 1835, and on which he continued to live until the time of his death, and which from that time has been and is now in the possession of the petitioner.   The petition alleges that the certificate was lodged with a deputy surveyor in July, 1838, with directions to survey a league and labor so as to include the said improvement, and that there was sufficient vacant land for that purpose; that the surveyor was repelled by a force of armed men and prevented from completing the same; that the certificate was recommended as a legal and genuine claim, and placed in June, 1841, in the hands of another deputy surveyor, with directions to survey so as to include the settlement; that the survey was but partially made; that at some time not stated in the petition the deceased instituted a suit before an acting justice of the peace, against one John H. Duke, for having located seven hundred and ten acres of the land (for the survey of which this application for a *mandamus* is made,) and that on the 10th day of November, 1842, the said court adjudged that the right to locate the said seven hundred and ten acres of land was then and has been in the said deceased, Brewster; that the survey of Duke was wholly void; and that the county surveyor should deliver the field-notes of the said survey to Brewster; and that this judgment still remains in full force and effect, not reversed, satisfied, or in anywise vacated; that the certificate of Brewster had in the meantime been lost, and, from a suspension of business in the land office, a duplicate could not be obtained previous to the death of Brewster in 1843; that this was issued in 1845 and placed, in 1847, in the hands of the defendant, with directions to survey nineteen hundred and twenty acres of land so as to include the improvement to which reference has been made.

The defendant, in his answer or return, states that he is [**331**] informed

and believes that John H. Duke, John H. Glover, and others are interested in the matters set forth in plaintiff's petition, and prays that they may be cited to defend, and himself released, as he has no other interest than as county surveyor; and in an amended return he states as his reasons for not surveying the said land according to the directions of the plaintiff that it appears from the records of his office that on the 20th July, 1841, seven hundred and fifty acres of the land were surveyed and recorded by his predecessor in office.

On the pleadings it was adjudged that, as it appeared from the answer of the defendant a portion of the land had been surveyed for other persons and the field-notes recorded, the rule should be discharged and the *mandamus* refused; and from this judgment an appeal has been taken to this court.

The allegations of the parties on applications for a *mandamus* to compel the survey or patent of lands are frequently so indefinite and vague as to the grounds on which the right is claimed or denied as to create embarrassment in rendering the judgment demanded by the justice of the case. The circumstances under which the applicant claims the right should be positively and distinctly stated, and objections which might be anticipated should be met and answered. (1 Chitty Gen. Prac., 808; 25 Maine R., 291.) In the answer or return of the defendant, according to the strict rules of the common law, the same certainty is required as in indictments, returns to writs of *habeas corpus*, counts, replications, &c.; and under any system there should be a reasonable degree of certainty. A fair and legal reason should be disclosed why the alternative *mandamus* should not be obeyed. (2 Tex. R., 461; 6 Tex. R., 495; 10 Pick. R., 59.)

This certainty of pleading on the part of the plaintiff or relator is essential as well from the general rule requiring in petitions, in all cases, a full and clear statement of the facts as upon the grounds that this remedy is not allowed in cases where the law affords other adequate means of redress; and that it issues only to perform a duty clearly defined by [**332**] law, involving no discretion nor leaving any alternative. (12 Pet. R., 452; 14 Id., 514; 3 How. R., 97; 6 Id., 98; Glascock *v.* The Commissioner of the General Land Office, 1 Tex. R., 51; Bracken *v.* Wells, Id., 88.)

Many of the facts essential to the establishment of the plaintiff's claim are pleaded with a commendable degree of fullness and precision, but there are some important circumstances relative to the suit before the magistrate and the recording of the field-notes of the survey of Duke which are omitted. The provisions authorizing the summary determination of conflicting claims to a location by the nearest justice of the peace and six jurors contemplates evidently the adjustment of the controversy before the transmission of the field-notes for record to the office of the county surveyor.

The 17th section of the land law of 1837, p. 68, under which the proceeding was had, gives authority to survey on certificates of headright claims, and instructs the surveyor, in case of conflicting claims, to which party, under certain circumstances, preference shall be given; and in all other cases the conflict is to be adjudged by the nearest justice of the peace and six disinterested jurors, and upon their decision the surveyor shall grant to the successful party the field-notes of the tract of land. The object of the summary proceeding was that the disputes of this character should be promptly decided, as well for the benefit of the parties themselves as that the surveyor might ascertain the party to whom the field-notes properly belonged, and that the point at which the adjoining lands were open for location should be known. To avoid delay and suspense, no appeal was given, and the judgment was final and conclusive.

To permit the right to the field-notes to be contested before this special tribunal, at any distance of time after they have been recorded for one of the parties and perhaps patented to him, would in a great measure defeat the salutary operation of the law, and involve the records of the land office in the confusion intended to be obviated by the speedy decision of the controverted rights. But there may be circumstances which [**333**] might authorize a resort to this summary remedy within some reasonable time after the field-notes have

## Cullem v. Latimer.

been transferred to one of the parties and placed upon the record; such as, for instance, fraud on the part of the officers, ignorance of the party that the survey had been made, &c. At what time the proceeding here was commenced before the magistrate does not appear. It was concluded in November, 1842, sixteen months after the survey and perhaps the recording of the field-notes, though the time of the record is left uncertain. The suit was most probably instituted a considerable period after both these acts had been performed.

The applicant should, under the circumstances, have averred the time of the institution of the suit, and, if long after the survey, the reasons for the delay. If redress could be obtained in this summary mode at the commencement of the proceeding, it must be under circumstances not shown, and which should have been alleged, that the question of the validity of the judgment might be fairly considered and determined. It was evidently treated in the court below as a nullity, and totally disregarded. The facts in relation to the time at which the proceeding was commenced not being stated, and the question touching the validity of the judgment being but slightly adverted to in the argument, it is not, under the circumstances, deemed advisable to give a decisive opinion as to its legal force or effect.

The fact of the record of the field-notes must have been known to the applicant, and should have been stated, together with the grounds upon which the writ was claimed, notwithstanding such record.

The judgment was rendered nearly five years before the application to the defendant to make the survey; and the fact of his having had notice of the judgment should have been stated, on the ground that all the circumstances which would show that his duty was clear and involved the exercise of no discretion should have been averred.

The defendant, in his original answer, states that John H. Duke, John H. Glover, and others are interested in the [334] matters contained in the plaintiff's petition, and prays that they may be cited to defend, as he has no other interest than as county surveyor. It is a rule in applications for a *mandamus* that all persons principally interested in the defense must be included in the rule to show cause. (3 Burr. R., 1153; Smith v. Power, 2 Tex. R., 68.) The writ issues to compel the performance of a duty, but the survey or patent being predicated on the supposition that the land is vacant, or if not vacant, that the claimant has the best right, all persons who, to the knowledge of the applicant, claim property in the land should be summoned to defend their rights.

Had the judgment against Duke been rendered by a court of competent jurisdiction, a summons to him would be unnecessary, as his want of right would in that event have been conclusively established.

The returns of the defendant are very defective. The certainty required in an answer in cases of this character has been already indicated, and need not on this occasion be further developed. (Wil. M. C., pp. 402–406.) Had the parties really in interest been before the court, such issues would probably have been presented as to have raised the proper questions for the determination of the court.

The claimant's right to the land originally, as the oldest occupant and settler, is clear, as well by the Constitution as the land law of 1837. The statute evidently intended that this should be contested and decided summarily before the rights of others could be prejudiced by the laches of the claimant. Whether this has been done in compliance with the intent and spirit of the statute cannot be determined on the present state of the pleadings.

A portion of the land claimed by the relator appears, at least by implication, from the amended answer to be vacant. The only matter of contest arises in relation to the seven hundred and fifty acres surveyed for Duke.

The judgment is ordered to be reversed and the cause remanded for a new trial.

Judgment reversed.

NOTE 68.—Commissioner v. Smith, 5 T., 471; Arberry v. Beavers, 6 T., 457; Horton v. Pace, 9 T., 81; Watkins v. Kirchain, 10 T., 375; Puckett v. White, 22 T., 559; Houston Tap & Brazoria

R. R. Co. *v.* Randolph, 24 T., 317; Durritt *v.* Crosby, 28 T., '687; Tabor *v.* Commissioner, 29 T., 508; Railroad Company *v.* Commissioner, 36 T., 382; Bledsoe *v.* Int. R. R. Co., 40 T., 537; Kenchler *v.* Wright, 40 T., 537.)

Note 69.—As to decisions in election cases, see Arberry *v.* Beavers, 6 T., 457; O'Docherty *v.* Archer, 9 T., 295; Walker *v.* Tarrant County, 20 T., 16; Timmins *v.* Lacy, 30 T., 115; Wright *v.* Fawcett, 42 T., 203; Rogers *v.* Johns, 42 T., 339.