ROBERT SMITH v. LOWERY T. HAMPTON's HEIRS.

See this case for circumstances of uncertainty, suspicion and staleness of demand, under which the Court sustained a demurrer to an action for a specific performance of a contract to convey land.

Appeal from Polk. The facts are stated in the opinion.

*Yoakum & Branch*, for appellant. This cause was dismissed by the Court below *sine rythmo vel ratione.* It was a suit to enforce a contract in writing, duly executed by the parties. There was no law at that time (1835) prohibiting such a contract. Plaintiff averred the performance by Choate of the conditions on his part to be performed. The exceptions to the petition were general; it pointed out no insufficiency; nor did the Court point out any apparent on the record, nor does plaintiff know of any.

HEMPHILL, CH. J. This is a suit for specific performance. The petition was filed on the 15th of April, 1852, and it represents that on the 14th April, 1835, Lowery T. Hampton and Moses L. Choate entered into an agreement, filed with and made a part of the petition, by which Lowery T. Hampton sold and obligated himself to convey to the said Moses L. Choate, one undivided half of his headright league. The petitioner avers that the said Moses L. fully performed his part, and the instrument containing said agreement was by the said Lowery T. delivered over to the said Moses L. Choate; that said land was located in Polk county, and is fully described in the field notes filed. It is further alleged that on the 17th April, 1849, the said Moses L. sold to petitioner all his interest, title and claim to said land; said conveyance is indorsed on said agreement, and is also made a part of the petition. It

is averred that said lands have never been divided, nor conveyance made in pursuance of the agreement; that the said Lowery T. Hampton is dead, and the names, number and residence of his heirs and legal representatives are unknown. He prays that publication be made for said unknown heirs, and that conveyance be made to him.

The petition was subsequently amended by making a translated copy of the title issued to Hampton on the 11th April, 1835, a part of the petition.

The attorney appointed to represent the unknown heirs, excepted to the sufficiency of the petition, and pleaded general denial, limitation, fraud, &c.

The demurrer of the defendants was sustained, the petition dismissed, and the plaintiff appealed.

The grounds upon which the Court decided, do not appear from the record; nor have they been indicated in the briefs or arguments of counsel. Without the benefit of the reasons which influenced the action of the Court below, we will proceed to inquire whether there be such error as to require the reversal of the judgment.

This is an action against unknown heirs, and the requisition that the cause of action must be set forth clearly and fully, with other necessary and pertinent allegations, applies with peculiar force. The proceeding is in fact *ex parte*, and may operate most prejudicially upon the rights of absent defendants, though they have under the statute a measure of relief which is but partial, limited in time and burthened with conditions. Under such circumstances and against those who are defenceless, the plaintiff should not invoke the aid of a Court, without a most satisfactory showing of merits and of a case which conclusively entitles him to relief.

Now what are the facts upon which, in this case, the plaintiff bases his claim to the one-half of this league of land?

The agreement on its face presents some extraordinary, not to say suspicious features. The title to the league was issued on the 11th April, and this agreement bears date three days

subsequent, viz: on the 14th April, 1835, and yet throughout the agreement there is no allusion to the particular or specific land embraced in the title from the Government.

The instrument, in all its terms, in its substance and purport, refers not to titled, but to untitled lands. It provides for the division of the league to which Hampton was entitled as a colonist, so soon as the said league shall have been given possession of and corresponding titles extended; that then the said Hampton should execute to Choate a conveyance of the said half league, the said Choate obligating himself to make for the whole league, all and every payment and defray all expenses which may be necessary "in order to get the title for the said league of land," and also to pay the government fees for the same. These terms show an agreement, not about this league of land for which Hampton had received title, but about some league for which Hampton by virtue of his rights as a colonist might thereafter obtain title. The time of the agreement to sell, whether before or after title, was, under the laws, as they then existed, of the essence of the obligation of the contract. (Art. 36, Decree No. 272, L. C. and T.) If before, the agreement was unlawful; if after, it was binding, provided it was in other respects valid and lawful. The liability of Hampton under this agreement (in the aspect under which we are now considering it) depends upon the fact of whether it was made previously or subsequently to the title; and it is but a reasonable presumption, that if the title had been extended before the date of the agreement, a fact of such vital importance would have been indicated in some mode in the body of the agreement. But there is no such indication in the agreement. In fact, it shows the reverse, and that it was executed before title; and it is only from its date, which is in contradiction to its terms and substance, that an inference can be drawn of its having been executed after the issue of the title. This species of contradiction and repugnance might not be a matter of much importance, where there is authority to sell before as well as after title; but where it is oth-

erwise, it is a circumstance which throws a degree of suspicion over the transaction, and gives it an aspect which requires explanation, and which certainly does not at the first blush commend it to the respect and aid of a Court of Justice, and especially in a case where the party to be affected by the decree, is not and cannot be present to represent and vindicate his own rights. Again, this instrument purports in its body to be attested by five subscribing witnesses, whereas it is witnessed by but one, viz: H. H. Edwards. For the purpose of recording, it is proven, not by H. H. Edwards, the sole subscribing witness, but by J. L. Thorn, who swears that he is a subscribing witness and that Washington Lewis, one of the subscribing witnesses, is dead, and that the other witnesses, viz: Mortimer Thorn and H. G. Monroe, are absent from the State. None of these persons appear as witnesses on the agreement as exhibited in this record. There has been no suggestion of diminution, and no intimation that the agreement was not truly copied in the transcript. It appears there as an agreement which those interested have attempted to sustain by proving its attestation by what may have been supposed to be the requisite number of witnesses under the law at the date of the contract, but which in fact was not attested or signed by any such witnesses.

And the only witness who does appear to have signed, was not called upon for proof, nor was his absence explained. These circumstances should be explained before a Court could be invoked to extend aid in carrying such agreement into effect.

But the most potent objection to the interposition of the Court in this case, arises out of the great delay of the plaintiff in claiming or attempting to enforce his supposed rights. Seventeen years had elapsed from the date of the agreement to the filing of the petition. But it may be said that Choate was not obliged to pay the whole of the Government dues, until six months after the opening of the Land Office. If so, twelve or thirteen years must have elapsed from the time when

his contract should have been fully performed, before he in-
voked the aid of the Court to enforce the agreement. He
avers that he had performed his part of said agreement, and
that the said instrument of writing was by the said Lowery
T. Hampton delivered to him. There is nothing said in the
instrument about its being deposited with either party. The
plaintiff had as much right as the other party to its possession.
There is no averment that the agreement had been performed
by the plaintiff, according to its terms. He may have paid
the Government dues long after the time indicated in the
agreement. If so, neither Hampton nor his heirs were bound
by any such payment. But if he had performed according to
the terms, he cannot lie by for any lapse of time, and then call
on a Court for aid in enforcing title. It is not the province of
a Court to enforce stale demands. The law protects those
who watch over, and not those who sleep upon their rights.
Where time is suffered to elapse and throw darkness over the
transaction, the pressumption is that some other arrangement
has intervened, by which former agreements have been annul-
led; or that the parties are, or should be satisfied to leave
their rights in the condition in which, by their own acts, they
have been placed. The statute of limitations does not operate
expressly on suits for specific performance, but lapse of time
does, and the length of time is governed by the circumstances
of the particular case.

Where the purchase money has been paid by the vendee
according to the terms of the contract, then the longest period
of limitation known to our laws, viz: ten years, must elapse
before he can be refused the aid of a Court for specific per-
formance, unless there be circumstances which would indicate
rescission of the contract, then the lapse of time would operate
with more or less force against the application to the Court
for relief. In this case there was no possession taken or at-
tempted by the vendee, not a solitary circumstance is stated
which would indicate at least the belief of the plaintiff that he
had some right in the land; no reason is given, if in fact there

could be any, why he did not at an earlier period attempt to enforce the agreement. He has reposed upon his rights, if any he ever had, and he now seeks to enforce, against those who cannot defend themselves, an agreement which is suspicious in itself, which has been dormant beyond the period allowed by our laws; and we are of opinion therefore that his petition was properly dismissed, and the judgment is ordered to be affirmed.

Judgment affirmed.